United States District Court
Southern District of Texas
**ENTERED**
May 28, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **Plaintiff/Respondent,** | § | |
| | § | |
| **v.** | § | **Criminal Action No. 6:22-CR-00090-3** |
| | § | **Civil Action No. 6:25-CV-00033** |
| **CHARLES BRANCE ADAMS,** | § | |
| | § | |
| **Defendant/Movant.** | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Charles Brance Adams's *pro se* Motion to

Vacate Sentence pursuant to 28 U.S.C. § 2255 (the "Motion"), (Dkt. No. 233), to which the

United States of America (the "Government") has responded, (Dkt. No. 263).[1]  For the

reasons stated herein, the Motion is **DENIED**.

## I.    BACKGROUND

Defendant Charles Brance Adams ("Adams") is the brother of Trace Adams.  (Dkt.

No. 184 at 5–6).   On October 9, 2022, after Trace Adams was arrested for

manufacturing/delivering methamphetamine and steroids and for tampering with

evidence, he called his brother from prison.  (*Id.* at 6).  During that call, Trace asked

Adams to retrieve several items from Trace's house—where Adams was staying—

including a cell phone, a box, and suspected United States currency possibly totaling

$7,400.  (*Id.*).  According to a Victoria County Sheriff's Office ("VCSO") deputy, Trace had

---

[1]    Docket Numbers (Dkt. No.) refer to the criminal case.

a history of calling people while in custody to move evidence and contraband from one location to another. (*Id.*).

VCSO and the Victoria Police Department ("VPD") began surveillance on Trace's residence on October 10, 2022. (*Id.*). They observed a white Dodge truck belonging to Trace leaving the location. (*Id.*). Law-enforcement authorities followed the vehicle and observed it violating several traffic laws and suspiciously entering and exiting a nursing home parking lot. (*Id.*). After pulling the vehicle over, officers identified the driver as Adams and cited him for traffic violations and for the vehicle not having a window-tint label. (*Id.*).

A search of Adams revealed a large amount of United States currency in his pants pocket totaling about $7,420. (*Id.*). During an inventory search of the vehicle, law enforcement located a blue and gray Under Armor backpack on the rear seat. (*Id.*). The backpack contained Adams's bank card, a single bag containing 5.38 grams of 99% pure methamphetamine, a black box, and a digital scale with residue consistent with methamphetamine. (*Id.*). The black box contained multiple individual bags of methamphetamine. (*Id.*). The total seized amount of methamphetamine was 349.3 grams of 91% pure methamphetamine (317.8 grams actual). (*Id.*). Adams later claimed he did not know how much methamphetamine he was transporting. (*Id.* at 7).

On December 22, 2022, Adams, Trace, and another co-defendant were charged with knowingly and intentionally conspiring to possess with intent to distribute a controlled substance. (Dkt. No. 1). This violation involved more than 50 grams of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 846,

2

841(a)(1), and 841(b)(1)(A).  (*Id.*).  A Superseding Indictment was later filed to add additional co-defendants.  (Dkt. No. 92).  On February 26, 2024, Adams pled guilty to the charged crime pursuant to a written plea agreement.  (*See* Dkt. No. 257); (*see also* Dkt. No. 174).  Under the plea agreement, Adams agreed to plead guilty to Count 1 of the indictment and waive his right to appeal or collaterally attack his conviction or sentence, except to raise a claim of ineffective assistance of counsel.  (*See generally* Dkt. No 174).  In exchange, the Government agreed to recommend a sentence within the applicable guideline range as well as several potential guideline reductions based on timely notification of guilty plea and substantial assistance.  (*Id.*).

At his February 26, 2024, rearraignment hearing, Adams affirmed under oath that he had been able to communicate with his counsel, Mr. Joel Thomas, and that he had had enough time to discuss the case with counsel.  (Dkt. No. 257 at 6–7).  Adams testified that he understood the nature of the charges, the elements of each offense, and his right to plead not guilty and proceed to trial.  (*Id.* at 7–10).  He stated that he and counsel had discussed how his sentence would be calculated under the Sentencing Guidelines and that he understood that he faced a maximum of life imprisonment.  (*Id.* at 10–12).  He further testified that he was not threatened, coerced, or promised leniency in exchange for his guilty plea.  (*Id.* at 12).  He also testified that he understood and signed the plea agreement and that he could not withdraw his guilty plea if he did not receive the sentence he was expecting or had hoped for.  (*Id.* at 14–15).  Adams also affirmed that the facts contained in the Stipulation of Facts were true.  (*Id.* at 16–21).  The Court accepted Adams's guilty plea after being satisfied that he was competent to enter the plea, he

understood the consequences of entering a plea, and he was voluntarily and knowingly pleading guilty. (*Id.* at 21).

Adams's Presentence Investigation Report ("PSR") calculated the base offense level for Count 1 at 32. (Dkt. No. 184 at 13). Two levels were subtracted for Adams's minor role in the criminal activity. (*Id.*). After credit for acceptance of responsibility, his total offense level was 27. (*Id.*). With a criminal history category of V, his advisory Guidelines sentencing range was 120–150 months. (*Id.* at 20). Adams filed an objection to the PSR on the grounds that he should have received a four-point reduction for his minor role in the criminal activity as opposed to the two-point reduction he actually received. (*See* Dkt. No. 183). The Court agreed with Adams and granted an additional two-point reduction pursuant to U.S.S.G. § 2D1.1(a)(5)(A) and (B)(i). (Dkt. No. 190 at 1). The new Guidelines sentencing range therefore was 120–125 months.[2] (*Id.*). The Court sentenced Adams to 120 months' imprisonment as well as 24 months' imprisonment for violating a term of supervised release, to run concurrently. (Dkt. No. 197 at 14).

Judgment was entered on May 20, 2024. (Dkt. No. 189). On June 3, 2025, Adams filed a Motion to Vacate under 28 U.S.C. § 2255. (Dkt. No. 233). The Government filed a Motion for Summary Judgment in response. (Dkt. No. 263). Despite moving for an extension of time to file a reply, (Dkt. No. 267), and a continuance, (Dkt. No. 270)—both of which the Court granted, (Dkt. Nos. 269, 271)—Adams failed to file a reply.

---

[2]    The minimum term of imprisonment for violations of 21 U.S.C. §§ 846 and 841(b)(1)(A) is 120 months. (Dkt. No. 184 at 27).

## II.    LEGAL STANDARD

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996).  "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice."  *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992).

An ineffective-assistance-of-counsel allegation presented in a Section 2255 motion is properly analyzed under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed. 674 (1984).  *United States v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001).  To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his or her counsel's performance was both deficient and prejudicial.  *Id.*  This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence.  *United States v. Dovalina*, 262 F.3d 472, 474–75 (5th Cir. 2001).

In reviewing ineffectiveness claims, "judicial scrutiny of counsel's performance must be highly deferential," and every effort must be made to eliminate "the distorting effects of hindsight."  *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.  An ineffective assistance

5

claim focuses on "counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct," because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence." *Id.* at 689–90, 104 S.Ct. at 2065–66.  With regard to the prejudice requirement, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694, 104 S.Ct. at 2068; *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one."); *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

## III.   DISCUSSION

Adams raises the following claims in his Section 2255 Motion:

1)   His counsel failed to make objections during the sentencing phase of his trial related to a mitigating-role adjustment and an incorrect criminal history calculation.

2)   His guilty plea was not voluntarily or knowingly made because his attorney lied to him.

3)   The traffic stop precipitating his arrest was unlawful and his attorney should have moved to suppress the evidence against him.

(Dkt. No. 233 at 5–10, 14–18).

The Government responds that each claim is legally meritless or is otherwise procedurally barred.  (Dkt. No. 263).

6

### A.    GROUND ONE

In Ground 1 of the Motion, Adams claims that he received ineffective assistance of counsel at sentencing because his counsel failed to argue for a mitigating role sentencing adjustment and failed to object to his criminal history point calculation. (Dkt. No. 233 at 5, 14–15). This argument is contradicted by the record. Not only did Adams's counsel file a substantive written objection addressing the mitigating role adjustment, (*see* Dkt. No. 183), counsel also orally urged this same objection at sentencing, (Dkt. No. 191 at 8–9). In fact, both Probation and the Court agreed with Adams's counsel and granted him an additional two-point sentence reduction. (*Id.*). As for the criminal history score claim, his counsel also argued at sentencing that "his criminal history is a little bit over represented" because "[h]e basically received seven points for one offense." (*Id.* at 10–11). This is the same argument Adams now asserts in his Section 2255 motion. (*See* Dkt. No. 233 at 5, 14–15).[3] Adams cannot claim his counsel was ineffective when his counsel raised the very same objections at sentencing that he now asserts.

Accordingly, Adams has failed to show that his counsel's performance at sentencing was deficient, and the Court therefore denies his claims in Ground 1.

---

[3]    Even if Adams's counsel failed to raise this issue at sentencing it would still be meritless. As the Government explains, (*see* Dkt. No. 263 at 20–22), under U.S.S.G. § 4A1.2(a)(2), prior sentences are treated as a single sentence unless (1) they are "separated by an intervening arrest," (2) "the sentences resulted from offenses contained in the same charging instrument," or (3) "the sentences were imposed on the same day." None of these sections apply to Adams's previous sentences. (*See* Dkt. No. 184 at 18–19).

**B.    GROUND TWO**

In Ground 2 of his Motion, Adams claims that he was coerced into pleading guilty and that he did not do so voluntarily or knowingly.  (*Id.* at 6, 15–17).  Specifically, he asserts that he was coerced because counsel told him (1) that he would get "50 to life," that he would never win at trial, and that the Government "could charge [him] with the entire conspiracy" which "was absolutely untrue," (2) that his brother would testify against him, (3) that he could pursue civil lawsuits against the Sheriff's Office for Fourth Amendment violations despite "a guilty plea barr[ing] [him] from any action," and (4) that he would receive a minimal-role adjustment if he pled guilty.  (*Id.*).

Before deciding whether to plead guilty, a defendant is entitled to "the effective assistance of competent counsel."  *Padilla v. Kentucky*, 559 U.S. 356, 364–65, 130 S.Ct. 1473, 1480–81, 176 L.Ed.2d 284 (2010) (quoting first *McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970), and then citing *Strickland*, 466 U.S. at 686, 104 S.Ct. at 2063).  *Strickland's* two-part analysis applies to claims of ineffective assistance of counsel in this context.  *E.g.*, *Hill v. Lockhart*, 474 U.S. 52, 57, 106 S.Ct. 366, 369–70, 88 L.Ed.2d 203 (1985).  During this stage of a proceeding, the Supreme Court has reiterated that counsel has "the critical obligation . . . to advise the client of 'the advantages and disadvantages of a plea agreement.'"  *Padilla*, 559 U.S. at 370, 130 S.Ct. at 1484 (citing *Libretti v. United States*, 516 U.S. 29, 50–51, 116 S.Ct. 356, 368, 133 L.Ed.2d 271 (1995)).  "It is the lawyer's duty to ascertain if the plea is entered voluntarily and knowingly," and the "lawyer must actually and substantially assist his client in deciding whether to plead guilty."  *United States. v. Cavitt*, 550 F.3d 430, 440 (5th Cir. 2008) (quoting *Herring v. Estelle*,

491 F.2d 125, 128 (5th Cir. 1974)).  "It is his job to provide the accused an understanding of the law in relation to the facts."  *Id.*  "The advice he gives need not be perfect, but it must be reasonably competent."  *Id.*  In this context, the prejudice prong requires the prisoner to demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *United States v. Smith*, 844 F.2d 203, 209 (5th Cir. 1988) (quoting *Hill*, 474 U.S. at 59, 106 S.Ct. at 370).  "The test is objective; it turns on what a reasonable person in the defendant's shoes would do."  *Id.* at 209; *accord Padilla*, 559 U.S. at 372, 130 S.Ct. at 1485 ("[A] petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.").

In determining the voluntariness of a plea, a court considers all relevant circumstances, including whether the defendant: (1) had notice of the charges against him; (2) understood the constitutional protections he was waiving; and (3) had access to competent counsel.  *United States v. Washington*, 480 F.3d 309, 315 (5th Cir. 2007).  With respect to sentencing, a guilty plea is considered knowing and voluntary so long as a defendant knows "the maximum prison term and fine for the offense charged."  *Ables v. Scott*, 73 F.3d 591, 592 n.2 (5th Cir. 1996) (quoting *United States v. Rivera*, 898 F.2d 442, 447 (5th Cir. 1990)).  As long as Adams "'understood the length of time he might possibly receive, he was fully aware of his plea's consequences.'"  *See Barbee v. Ruth*, 678 F.2d 634, 635 (5th Cir. 1982) (quoting *Bradbury v. Wainwright*, 658 F.2d 1083, 1087 (5th Cir. 1981)).

Adams's sworn statements in open court are entitled to a strong presumption of truthfulness. *United States v. Lampaziane*, 251 F.3d 519, 524 (5th Cir. 2001) (citing *Blackledge*

9

*v. Allison*, 431 U.S. 63, 74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977)).  Indeed, the Fifth Circuit affords "great weight to the defendant's statements at the plea colloquy."  *United States v. Cothran*, 302 F.3d 279, 283–84 (5th Cir. 2002).  Furthermore, a signed, unambiguous plea agreement is accorded great evidentiary weight when deciding if the plea is entered voluntarily.  *See Bonvillan v. Blackburn*, 780 F.2d 1248, 1252 (5th Cir. 1986).

Adams affirmed under oath at rearraignment that he had discussed his charges with counsel and understood the charges.  (Dkt. No. 257 at 6–7).  He stated that he understood his right to a trial and his rights at trial, and that he was waiving those rights.  (*Id.* at 7–9).  He affirmed that he understood all the elements of the offense he was charged with.  (*Id.* at 9–10).  Adams acknowledged the maximum punishment and stated that he had discussed the sentencing procedures with counsel.  (*Id.* at 10–11).  He affirmed that no one had threatened or forced him to plead guilty, and no one had promised him leniency.  (*Id.* at 12).  He also affirmed that the plea agreement was accurately described, the stipulation of facts was true and correct, and he had given counsel permission to sign both documents.  (*Id.* at 13–21).  The Court accepted Movant's guilty plea after being satisfied that he was competent to enter a plea, that there was a factual basis for the plea, that he understood the consequences of entering a plea, and that he was voluntarily and knowingly pleading guilty.  (*Id.* at 21).

The evidence before the Court shows that Adams's guilty plea was knowing and voluntary.  Accordingly, Adams's claim in Ground 2 is denied.

## C.    GROUNDS THREE AND FOUR

Finally, Adams argues in Grounds 3 and 4 that he received ineffective assistance of counsel because his counsel failed to file a motion to suppress related to alleged Fourth Amendment violations during his arrest.  (Dkt. No. 233 at 8–9, 17–18).

"A voluntary and unconditional guilty plea has the effect of waiving all nonjurisdictional defects in the prior proceedings."  *United States v. Wise*, 179 F.3d 184, 186 (5th Cir. 1999) (citing *McMann v. Richardson*, 397 U.S. 759, 766, 90 S.Ct. 1441, 1446, 25 L.Ed.2d 763 (1970); *Busby v. Holman*, 356 F.2d 75, 77 & n. 3 (5th Cir. 1966) (collecting cases)).  "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."  *United States v. Smallwood*, 920 F.2d 1231, 1240 (5th Cir. 1991) (citation omitted). "This includes all [ineffective assistance of counsel] claims 'except insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary.'" *United States v. Palacios*, 928 F.3d 450, 455 (5th Cir. 2019) (quoting *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000)).  The Fifth Circuit and other courts have found waiver on this basis when a defendant's ineffective assistance claim is premised on a failure to file a motion to suppress.  *United States v. Terry*, 233 F.3d 574 (5th Cir. 2000) (per curiam); *see also Boudreaux v. Kent*, No. 3:20-CV-00120, 2023 WL 2439840, at *5 (M.D. La. Feb. 16, 2023), *report and recommendation adopted* 2023 WL 2436954 (M.D. La. Mar. 9, 2023); *Sanchez v. United States*, No. 3:15-CR-00432, 2020 WL 1942137, at *2 (N.D. Tex. Feb. 19, 2020), *report and recommendation adopted* 2020 WL 1940269 (N.D. Tex. Apr. 21, 2020).

Because the Court has already found that Adams's plea was voluntary, his right to challenge counsel's failure to file a motion to suppress is waived.  Accordingly, his claims in Grounds 3 and 4 are denied.

## IV.    CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A).  The Section 2255 Rules instruct this Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rule 11, § 2255 Rules.

A certificate of appealability (COA) "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits."  *Miller-El v. Cockrell*, 537 U.S. 322, 336, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003).  To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 1604, 146 L.Ed.2d 542 (2000). This standard requires a Section 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further.  *United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon *Slack*, 529 U.S. at 483–84).

Based on the above standards, the Court concludes that Adams is not entitled to a COA. That is, reasonable jurists could not debate the Court's resolution of his claims, nor do these issues deserve encouragement to proceed. *See Jones*, 287 F.3d at 329.

## V.    CONCLUSION

For the foregoing reasons, Adams's *pro se* Motion to Vacate Sentence pursuant to 28 U.S.C. § 2255, (Dkt. No. 233), is **DENIED**, and he is further **DENIED** a Certificate of Appealability.

It is SO ORDERED.

Signed on May 28, 2026.

_____
**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**